# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| BUILDING ERECTION SERVICES, INC., | ) |
| Plaintiff, | ) |
| vs. | ) |
| JLG INDUSTRIES, INC. | ) |
| Defendant/Third-Party Plaintiff | ) Case No. 02-6087-CV-SJ-FJG |
| vs. | ) |
| POWERSCREEN USC, INC. and POWERSCREEN INTERNATIONAL, | ) |
| Third-Party Defendants. | ) |

## ORDER

On April 27, 2005, the Court ordered the parties to file briefs no longer than ten pages in length addressing the issues which they believe remain for trial. The parties have now done so and after reviewing the parties' submissions, the Court issues the following order.

**I. Strict Liability Claims**

JLG maintains that it is entitled to indemnity coverage for the claims that fall within the Agreement's coverage of "any product liability claim" including the strict liability and failure to warn claims. JLG states that the strict liability and failure to warn claims are labeled as claims for "Product Liability" "Product Defect" and "Failure to Warn" in the First Amended Complaint of personal injury plaintiffs Heath and Eslinger, the BES Complaint of January 2, 2001, and BES's First Amended Answer to Plaintiff's

First Amended Petition and Cross Claims of October 13, 2003. Additionally, JLG asserts that the BES "Contribution and Indemnity" and the Carlene Heath "Loss of Consortium" claims in these complaints incorporate the strict liability and failure to warn claims.

JLG argues that the strict liability and failure to warn claims are at the very heart of the term "product liability claim." JLG also states that any other interpretation would violate the fundamental rule that words in a contract cannot be interpreted in a way that would render them moot, superfluous or meaningless. If the Court were to adopt Powerscreen's interpretation, JLG argues that the entire indemnity provision in Section 8.05(d) would have absolutely no meaning whatsoever. JLG also argues that two courts have determined that a reference to "product liability claims" in an indemnity agreement was sufficient to require indemnity for strict liability claims.

Powerscreen argues that the strict liability claims are not covered by the indemnity language because the indemnity clause does not specifically refer to "strict liability claims." Powerscreen admits that no Delaware court has addressed this issue, but notes that the Fifth Circuit, in <u>Fina v. Arco</u>, 200 F.3d 266 (5th Cir. 2000), interpreted Delaware law and found that strict liability claims were also subject to the Delaware "crystal clear and unequivocal" test.

Despite the fact that the term "product liability action" is not defined in the Agreement, the Court finds that the term covers the Strict Liability and Failure to Warn claims. The Court agrees with JLG that these are the very types of claims which one thinks of when describing product liability claims. It is difficult to imagine what type of claims would be considered product liability claims if strict liability and failure to warn

2

claims were not considered as such. While it is true that the Fifth Circuit in <u>Fina</u> found that the Delaware clear and unequivocal rule applied equally to strict liability claims, this Court is not bound by decisions of the Fifth Circuit and disagrees with that Court's interpretation. Accordingly, the Court finds that JLG is entitled to indemnity for the strict liability and failure to warn claims.

**II. BES Warranty Claims**

JLG argues that pursuant to the Asset Purchase Agreement, is it entitled to indemnity for "all warranty liabilities and obligations for products sold by the Division prior to the Closing Date." (Agreement § 8.5(c) & Schedule 1.01(f) ¶ 1). JLG states that the BES warranty claims are covered by this provision because they relate to boom truck cranes sold by JLG's Materials Handling Division prior to the Closing Date. Even though these claims are time barred, JLG states that it is entitled to recover the expenses and attorneys' fees incurred in defending them.

Powerscreen's position is that a letter settlement agreement entered into by JLG and Powerscreen on April 21, 2003, prevents JLG from seeking indemnity for the costs of defending the warranty claims. The letter states in part:

> If the district court's dismissal of the BES claim is affirmed on appeal, JLG and Powerscreen will seek a dismissal of the third party indemnity claim without prejudice. Assuming a dismissal without prejudice is granted, JLG will not re-file its indemnity claim in the BES action against Powerscreen. On the other hand, if BES prevails on its appeal, JLG reserves the right to pursue its third party claim against Powerscreen, including its claim for attorneys' fees. This agreement is not intended to limit or prejudice JLG's right to seek indemnity for the claims or fees asserted or incurred in the Heath action (or any other action), including claims asserted by BES in that action.

The difficulty with the letter agreement is that it did not address what happened

with regard to the BES appeal - it was affirmed in part and reversed in part. Powerscreen argues that because the Eighth Circuit upheld the dismissal of the warranty claims, the agreement prevents JLG from seeking indemnity for these claims. JLG's position is that the agreement was all-or-nothing, and because a portion of the district court order was reversed, it is not bound by the agreement at all. JLG argues that the intent of the parties was to walk away from further litigation only if the litigation between BES and JLG was over as a result of the district court's ruling.

Powerscreen argues that the interpretation of the settlement agreement is to be governed by the same principles applicable to any other contract, and the cardinal rule of interpretation is to ascertain the intent of the parties and to give effect to that intent. Powerscreen argues that it is obvious that the parties to the Agreement contemplated dismissal of the indemnity action if the dismissal of BES's claims were affirmed. Because the dismissal of the warranty claims was affirmed, Powerscreen argues that JLG is not entitled to seek recovery of any attorney fees regarding these claims. As to the tort claims, Powerscreen argues that these claims have also now been dismissed and that while it might take a second appeal to affirm dismissal of those claims, that should not effect the enforceability of the Letter Agreement. Powerscreen also states that it has been the party that has been the moving force in obtaining summary judgment on BES's claims in the first case, defending the appeal, and in obtaining partial summary judgment after remand.

After reviewing the Letter Agreement, the Court finds that the intention of the parties was to walk away from the litigation if the court's order granting summary judgment were upheld on appeal. However, because the appeal was not affirmed in its

4

entirety, the Court finds that JLG is not bound by the agreement. If the parties had wanted to be more specific, they could have clearly spelled out the consequences of a partial affirmance or reversal. However, because they choose not to be so precise, the Court does not find that the Agreement is controlling as the appeal was not entirely upheld. Therefore, the Court determines that JLG is entitled to recover its expenses and attorney fees in defending against the BES' warranty claims, even though the dismissal of these claims was affirmed on appeal.

**III. JLG's Defenses Costs**

JLG argues that it is entitled to recover the costs of defending the negligence, strict liability and failure to warn claims asserted against it even if this Court concludes that it cannot recover indemnity for an actual judgment on one or more of these claims.

Powerscreen disagrees and states the Court has already addressed this issue and determined that Powerscreen is under no duty to indemnify or otherwise provide a defense to JLG for its negligence, fraud or negligent misrepresentation claims.

JLG states that although the Court in its April 27, 2005 Order stated that the plain language of the indemnity agreement did not cover the misrepresentation claims, the Court did not reach the issue of whether for purposes of the clear statement rule, there is a difference between a non-meritorious allegation of negligence and an actual negligent act.

In support of its position, JLG cites to three cases: Pike Creek Chiropractic Center, P.A. v. Robinson, 637 A.2d 418, 421-22 (Del. Super. 1994); Reliance Ins. Co. v. Richfield Hospitality Servs., Inc., 92 F.Supp.2d 1329, 1337 (N.D.Ga. 2000) and Rentz v. Rehoboth Mall Ltd. P'ship, No. 95C-01-018-HDR, 1997 WL 716893 (Del. Sup. Aug. 22,

5

1997). In Pike Creek, the Court considered whether an indemnitee was entitled to recover the expense of defending the action when the plaintiff's complaint made allegations against the indemnitee for which it could be indemnified and allegations against the indemnitee for which it could not be indemnified, it if was subsequently determined that the latter allegations were without merit. In that case, the chiropractor had agreed to indemnify his employer against any liabilities and expenses, including attorneys' fees which resulted from any acts and admissions of the chiropractor. A chiropractic patient brought an action against both the chiropractor and the chiropractic clinic. The court noted that Delaware law permitted the recovery of attorneys' fees pursuant to an express indemnification agreement.

> The rule in most jurisdictions, regardless of whether indemnity is based upon an implied or an express agreement, is that when a claim is made against an indemnitee for which he is entitled to indemnification, the indemnitor is liable for any reasonable expenses incurred by the indemnitee in defending against such claim, regardless of whether the indemnitee is ultimately held liable.

Id. at 420 (citations omitted and emphasis added). The Court in Pike was considering the question of when the right to indemnification commenced. The Court concluded that: "PCCC is entitled to indemnification from [the chiropractor] for the litigation expenses it incurred in defending the claims for which [the chiropractor] would have been required to indemnify PCCC in the event [the patient] had obtained an actual judgment." Id. at 421.

As the Court stated in the April 27, 2005 Order (Doc. # 214), regardless of whether BES' claims have merit, JLG is not entitled to indemnity for the cost of defending against claims which are not covered under the Agreement. Because the

6

Court has determined that JLG is not entitled to indemnity for the negligence, fraud or misrepresentation claims, it is also not entitled to its defense costs for these claims.

Likewise, the Court does not find that other cases which JLG has cited to be persuasive. In Reliance, a hotel management company and a security company entered into a Service Agreement. Subsequently, an employee of the hotel was injured when she was attacked by an intruder while working at the hotel. The employee sued the security company alleging that their negligence and breach of the Service Agreement caused her injuries. The insurer for the security company, Reliance Insurance, assumed the defense of the security company. The case was eventually settled. In the Agreement, the hotel management company agreed "to indemnify, defend and hold harmless [the plaintiff] against any claims by third parties." The Court determined however that under Georgia law, because the Agreement did not contain the explicit language stating that the indemnitee's own negligent acts were covered, the Agreement did not cover such acts. However, the Court determined that defendant was liable for the costs incurred by plaintiff in defending the suit. The Court stated:

> That is, one goes behind the complaint of the third party to determine whether the indemnitee was actually negligent. The fact that the third party may have alleged negligence as a claim in its complaint is not dispositive, however. Otherwise, the *allegations* of a third party, over which the indemnitee has no control, as opposed to the indemnitee's acts, for which the latter *is* responsible, would determine the resolution of the indemnification agreement.

Id. at 1341. The Court found that the hotel management company had successfully argued that plaintiff was not liable to the employee under a negligence theory, because plaintiff owed no duty to the employee. Because the management company had agreed to "defend" plaintiff against claims by third parties and because the management

7

company was freed from its obligations only to the extent that plaintiff's expenses were incurred as a result of plaintiff's negligence, and because the defendant had shown that plaintiff was not negligent, the Court found that defendant was required to reimburse plaintiff for the costs incurred by plaintiff in defending itself against the claim filed by the employee.

In <u>Rentz</u>, a shopper at a grocery store was injured when she slipped on a ramp in front of a grocery store. The store was located in a mall and the mall owner was responsible for maintaining all common areas, including the ramp where the plaintiff fell. The grocery store moved for summary judgment, arguing that it owed no duty to the plaintiff. The grocery store also moved for summary judgment against the mall owner pursuant to an indemnity clause in the lease agreement. The Court granted summary judgment in favor of the grocery store, finding that plaintiff had failed to show that the store had breached any duty to her. The Court also granted summary judgment in favor of the super market against the mall owner, finding that it was irrelevant that the plaintiff had alleged that the store was negligent, and "an indemnitee's actual wrongdoing or lack thereof, not a third-party plaintiff's allegations of wrongdoing, will determine whether the indemnitee is entitled to be held harmless." <u>Id</u>. at *3. Because the Court had determined that the store had not breached any duty, it was entitled to indemnity from the mall owner.

The Court does not find either of these cases helpful in the present dispute because they are not factually similar to the case at bar. The Court finds that the better position is to look at the language of the indemnity agreement itself and make a determination as to defense costs based on the language of the Agreement.

8

Section 8.05 of the Agreement states in part:

> Subject to the limitations set forth in Section 8.06, [Powerscreen] shall indemnify and hold [JLG] harmless from and against, and shall pay to [JLG] the full amount of, any loss, claim, damage, liability or expense (including reasonable attorneys' fees) resulting to [JLG], either directly or indirectly, from any . . . (c) Assumed Liability; and (d) any product liability claim resulting from incidents or injuries occurring following the Closing.

The Assumed Liabilities are listed in Schedule 1.01(f). Paragraph 6 of that Schedule states in part:

> Liability for all claims, demands, expenses and actions in law or in equity at any time made or brought by anyone or any entity for any damages of any nature or injuries of any kind arising from accidents or incidents occurring after the Closing Date and relating to the design, manufacture, assembly, sale, distribution or service of i) all unloaders and boom truck cranes and parts therefore which were manufactured and/or sold by either by [JLG], U.S. Truck Cranes, Inc., or USTC Indiana, Inc., or which are specified in the Stipulated Settlement Agreement (item 1, Schedule 1.01(k)), excepting however those cranes being the models specifically identified in Schedule 6.03 . . ..

As previously discussed, the Court has now determined that JLG is entitled to indemnification for the strict liability and failure to warn claims. Thus, JLG would also be entitled to the cost of defense for these claims, because these types of claims are specifically covered by the Agreement. However, JLG is not entitled to the cost of defense for the other types of claims which are not covered by the Agreement, specifically the negligence, fraud and misrepresentation claims.

In Hollingsworth v. Chrysler Corp., 208 A.2d 61 (Del. Super. 1965), the Chrysler Corporation contracted with Mahoney-Troast, a general contractor, to perform work at its plant. Mahoney-Troast hired Newark Construction Co. as a subcontractor. While Newark was performing under the subcontract, an employee of Newark, Hollingsworth, was injured. Hollingsworth then sued Chrysler for damages, alleging negligence on the

9

part of Chrysler's employees.  Chrysler then filed a third party complaint against Mahoney-Troast based on indemnity agreements and Mahoney-Troast brought in Newark also based on an indemnity agreement in the subcontract agreement.  At the trial of the tort claim, Chrysler was absolved of any negligence with regard to Hollingsworth's injury.  After defending Chrysler in the main suit, Mahoney-Troast sought from Newark the attorney fees and expenses that it had incurred in defending Chrysler with regard to the tort claim. The Court determined that the language of the indemnity agreement was not unmistakably clear, so as to immunize Mahoney-Troast from its own negligence. However, the Court then considered whether there existed a separate promise to defend even in the absence of liability.  The Court stated:

> It is clear that an unconditional promise to defend may impose a duty to defend within the coverage of the promise without regard to the suit's merit.  It is also clear that a promise to defend may extend to matters not covered by a promise to indemnify. . . .
>    These propositions, however, do not assist Mahoney-Troast in this case since the tort suit brought by Hollingsworth is not within the scope of the indemnity agreement as to which Newark made its promise to defend.
>    In this contract Newark assumed the risks 'of all damage or injury to any persons or property . . . resulting from any action or operation under the contract.'  I have interpreted this clause as indemnifying Mahoney-Troast only as to actions taken by Newark under the contract. The separate agreement to defend covers the risks since by its own terms it relates only to 'all claims on account of any *such* damage or injury.'
> . . .
> Newark has neither a duty to assume the risk nor a duty to defend unless the claim is based on Newark's 'action or operation under the contract.' For Newark to be obligated under its contract to defend, the primary suit had to be based in fact or law on Newark's action.

Id. at 65-66  (internal citations omitted).

This court agrees with the Hollingsworth decision.  As the Court has now determined that JLG is entitled to indemnity only for the strict liability, failure to warn

10

claims and warranty claims, these are the only claims for which it may seek its defense costs.

### IV. Extrinsic Evidence of Whether the Misrepresentation Claims Are Covered

JLG argues that when the Court ordered the parties to file briefs on whether the misrepresentation claims were covered, it did not have time to obtain and submit an affidavit on the issue before the deadline. JLG would like for the Court to consider an affidavit of JLG's Senior Vice President and General Counsel explaining that his understanding and intent in entering into the Agreement was that the language "relating to the design, manufacture, assembly, sale, distribution or service" of boom truck cranes and other equipment was intended to be comprehensive and to apply to any type of claim relating to JLG's full range of conduct in relation the covered equipment. He states that there was no intent to leave behind a narrow set of claims.

However, because the Agreement is clear on its face, the Court finds no reason to refer to extrinsic evidence as to what the parties intended or understood the Agreement to mean.

### V. CONCLUSION

Therefore, because the Court has determined that the strict liability claims are covered by the indemnity agreement and JLG is not bound by the letter settlement agreement with Powerscreen, the Court hereby **DENIES** Powerscreen's Motion for Judgment as a Matter of Law (Doc. # 216). The Court **GRANTS** JLG's Motion for Leave to File a Corrected Memorandum on the Indemnity Issues Remaining in the Case (Doc. # 218).

11

Now that the issues in this case have been even further refined, the Court will hold a teleconference with the parties on **Tuesday May 24, 2005 at 8:00 a.m.** to discuss the remaining issues for trial, the anticipated length of trial and whether any further discovery is necessary. Plaintiff's shall connect all other parties and shall initiate the call to the Court at the following number: (816) 512-5630.


Date: May 18, 2005                                        **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                                Fernando J. Gaitan, Jr.
                                                                              United States District Judge