# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| BUILDING ERECTION SERVICES, INC., | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| JLG INDUSTRIES, INC. | ) | |
| Defendant/Third-Party Plaintiff | ) | Case No. 02-6087-CV-SJ-FJG |
| vs. | ) | |
| POWERSCREEN USC, INC. and POWERSCREEN INTERNATIONAL, | ) | |
| Third-Party Defendants. | ) | |

# ORDER

Currently pending before the Court are the parties' Motions in Limine. The Court hereby rules as follows:

1. **BES' Motion in Limine**

   **A. Evidence or mention that BES' use of JLG # 1 at the time of the Sept. 30, 1999 incident violated OSHA.**

   BES wishes to exclude this evidence because even though OSHA investigated the accident, BES was not cited by OSHA for violating any regulations.

   JLG argues that the man basket which the painters were using was suspended from a wire rope from the top of the crane, rather than the manufacturer's intended purpose, which was to mount a platform to the nose of the crane. JLG argues that OSHA standards require the owner to comply with all the manufacturer's specifications

and limitations and because BES did not comply with these specifications, such deviations are relevant to its claim of contributory negligence.

The Court agrees that this evidence should be excluded. Therefore, BES' Motion in Limine on this issue is hereby **GRANTED**.

### B. Testimony by JLG or its Representative, Steve Forgas regarding the cause of the two crane failures.

BES states that as of the date of his deposition in October 2001, Mr. Forgas testified that JLG's investigation was still ongoing into the cause of the December 1995 failure of JLG # 2. BES states that JLG has not supplemented its discovery to identify any reasons that JLG has discovered for the crane failures. BES states that JLG has identified an expert, but has not listed Mr. Forgas or any other JLG employee as an expert. BES states that it would be unfair to allow any JLG witness to offer opinion testimony regarding any 30(b)(6) topics 6,7, 11-14, and 19 because when questioned about these conclusions, JLG's corporate representative testified that JLG had not reached any conclusions.

JLG states that its employees should be allowed to testify regarding factors which may have contributed to the alleged failures without actually stating opinion testimony as to the actual cause of the failure. JLG states that its employees should be allowed to testify regarding information on the design process of the cranes, engineering aspects, proper maintenance, effects of improper use of a man-basket, safety manuals, engineering training exercises, prior examinations or inspections of cranes, information obtained during the on-going investigation and experience within the industry. JLG states that this testimony will not include conclusions as to the actual

2

cause of the failures. JLG states that it has retained Ed Cox as an expert witness and he will render all opinions regarding conclusions as to the failure of the cranes.

The Court agrees that JLG employees should be limited in their testimony. Accordingly, the Court **GRANTS** BES' Motion in Limine on this issue and JLG employees will not be allowed to testify regarding the cause or what could have contributed to the crane's failure.

### C. Testimony by Greg Heath or Bill Eslinger regarding the cause of JLG # 1's failure on September 30, 1999.

Greg Heath and Bill Eslinger were the painters who were in the man basket in JLG #1 when the crane failed. BES states that neither of these individuals have been designated as experts and should not be allowed to testify regarding the cause of the failure.

JLG agrees that neither of these individuals is qualified to give testimony regarding the cause of the failures, but states that they are qualified to testify about factors which may have contributed to the alleged failure without actually stating an opinion as to the actual cause of the failure. JLG states that they should be allowed to testify as to what they actually observed at the time of the failures.

The Court **GRANTS** BES' Motion in Limine on this issue. Mr. Heath and Mr. Eslinger will not be allowed to testify regarding the cause of the crane failure, but they may testify regarding the resulting impact of the failure upon them. Any discussions about what they observed must be disclosed or tendered as an offer of proof in advance of trial.

3

**D. Evidence of the Settlement Agreement with Greg Heath, Carla Heath and Bill Eslinger.**

BES states that while the fact that personal injuries were sustained is important, the specifics of the settlement agreement are not relevant and nothing in the settlement agreement is relevant to any of BES' claims against JLG.

JLG states that if the indemnity portion of the trial is severed, then there is no need to put in evidence of the settlement.

Now that the indemnity portion of the trial has been severed, the Court agrees that the settlement agreement has no relevance to this phase of the case. Accordingly, BES' Motion in Limine on this issue is hereby **GRANTED**.

Accordingly, BES' Motion in Limine is hereby **GRANTED** (Doc. # 184).

**2**. **Powerscreen's Motion in Limine**

Powerscreen argues that JLG should not be allowed to mention or introduce evidence on its claim for attorney's fees and expenses through documents which have not been listed on its exhibit list or through testimony from persons not identified on its witness list.

Powerscreen states that JLG has not identified any documents such as attorney fee and expense statements in its pre-trial disclosures or list of exhibits to show that its attorney fees are both reasonable and related to an identifiable claim.

JLG argues that this issue is misplaced as the amount of attorney fees is a bench issue, not one for the jury. Additionally, JLG states that it has listed on its exhibit list, Michael Rafi, its associate general counsel, who has ultimate responsibility for supervising this litigation and approving the bills submitted by JLG's attorneys.

4

Additionally, JLG has submitted the qualifications of Mr. Rafi as an expert on litigation expense and management.

In light of the Court's ruling on the Motion to Sever, the Court hereby **DENIES** Powerscreen's Motion in Limine as **MOOT** (Doc. # 188).

**3. JLG's Motion in Limine**

  **A. Any claim by plaintiff for any damages to or for JLG # 2 arising out of either the December 18, 1995 incident or the September 30, 1999 incident.**

JLG states that under the economic loss doctrine, damages for harm to a defective product only are not recoverable under either negligence or strict liability. Since the damage to BES was economic only, it is restricted to the remedies provided by the UCC. JLG states that any warranty claims are barred by the UCC statute of limitations. As to the September 30, 1999 incident, the President of BES testified that JLG # 2 was repaired and placed back in service and they did not experience any further problems with this crane. JLG states that at the time BES took JLG #2 out of service, it was working properly and no one told BES that it was no longer safe to use. JLG states that there is no evidence that JLG #2 was likely to fail after September 30, 1999 and any evidence regarding additional business expenses or lost profits should not be allowed because it is too speculative.

BES admits that damages incurred between December 18, 1995 and January 1996, the date of JLG's fraudulent misrepresentation may not be recoverable, but the fact of damage and the fact of the incident is relevant as it relates to JLG's response to the incident. BES states that there was damage to more than just the crane, the truck on which the crane was mounted was also damaged. BES states that the damages

5

associated with its inability to use JLG # 2 because of JLG's fraud should be presented to the jury. BES states that the jury could find that JLG misrepresented the cause of the failure because it did not know why it failed, and it concealed this fact and allowed and encouraged BES to continue to use the cranes.

BES states that it will establish with reasonable certainty its losses associated with removing both cranes from use and it will show that it had to rent cranes to use in place of the JLG cranes until it could purchase replacements. BES will also present evidence that it has had to store the damaged cranes on its lot since the September 1999 incident. Absent JLG's misrepresentations, BES states that it would not have suffered these expenses.

With regard to damages arising out of the December 1995 incident, the Court has now determined that the economic loss doctrine does not prohibit plaintiff's claims for misrepresentation and negligent misrepresentation, therefore, plaintiffs may present evidence of their damages arising out of this incident. With regard to damages from the September 30, 1999 incident, the Court will conditionally allow plaintiff's to present their evidence regarding losses from the 1999 incident. If JLG has objections to this evidence, it may raise them when the evidence is offered. Accordingly, JLG's Motion in Limine on this point is **DENIED**.

> **B. Assuming plaintiff can make economic claims for JLG # 2, any claim by plaintiff for any damages other than repair and loss of use during the time of repair for JLG # 2.**

JLG #2 was involved in an incident on December 18, 1995. After it was repaired and put back into service, BES never had any problems with it after the repair. Thus,

6

JLG argues that BES' damages should be limited to the cost of repair, plus the value of its use during the time required to repair it.

BES argues that it is entitled to offer evidence on the loss of use on both cranes, because JLG first told them that modifications could be made to JLG #1 but did not have to be, then it failed in the same manner as JLG #2 had. BES states that it cannot use either crane because it cannot know when they might fail again.

The Court will allow plaintiff to offer evidence regarding the cost of repair in addition to the value of its use during the time required to repair JLG #2. Thus, JLG's Motion in Limine on this issue is hereby **GRANTED**.

**C. Any claims for lost business opportunity for the alleged inability to use either boom truck crane and any claim for increased business expenses other than rental expenses.**

JLG argues that BES believed that the cranes had no real value after the second accident. Thus, JLG argues that BES' damages should be the difference between the fair market value of the property before it was damaged and the fair market value of the property after it was damaged. JLG also admits that BES may be entitled to the damages for the loss of use under Missouri law, but these damages do not include lost business opportunity for the alleged inability to use either boom truck crane or any claim for increased business expenses other than rental expenses.

BES states that it will prove that it has incurred rental expenses, replacement cost expenses and loss of use expenses as a result of JLG's fraudulent and negligent misrepresentations regarding the cranes' safety. BES states that it is not alleging that it is entitled to recover some other form of business or lost profits beyond these.

7

In <u>Lewis v. Lawless Homes, Inc.</u>, 984 S.W.2d 583 (Mo.App. 1999), the Court stated:

> Where personal property used in business has been damaged, but not completely destroyed, through negligence, the owner may recover the amount of injury to the property plus the value of its use during the time reasonably required to repair it. . . . The value of its use is the cost of renting a similar piece of equipment or, if no similar equipment can be rented, lost profits.
> The general rule for measuring damage to personal property by others is the difference between the fair market value immediately before and immediately after the event causing the damage. . . . One of the exceptions to the general rule is that the cost of repair may be used to calculate damages when the property can be completely restored to its former condition at a cost less than its diminution in value. . . . In order to measure damages by the cost of repair, there must be evidence that the cost of repair is less than its diminution in value.

<u>Id</u>. at 586 (internal citations omitted). Thus, the Court determines that BES will be allowed to present evidence showing the amount of injury to the crane as defined above, plus the value of its use during the time reasonably required to repair the crane. Accordingly, JLG's Motion in Limine on this issue is hereby **DENIED**.

**D. Any claim for exposure to liability claims for the incidents involving JLG # 1 and #2 or indemnity or contribution for claims arising out of the September 1999 incident.**

JLG states that BES testified that the only damage BES incurred as a result of the 1995 incident was damage to the crane itself and these damages are barred under the economic loss doctrine. Additionally, JLG states that BES has not produced any documents or evidence that it has been sued or is defending any liability claim for the 1995 incident involving JLG # 2. JLG states that any claim for contingent, speculative or merely possible consequences of an injury may not be considered by a jury in assessing damages. Additionally, JLG states that there is no evidence that BES has

8

paid any money for exposure to liability claims other than the Heath and Eslinger plaintiffs.

BES argues that even though it has entered into an agreement with JLG nullifying its indemnity or contribution claims arising out of the September 1999 incident, this evidence is still relevant to prove that BES was correct in taking the cranes out of service and that they now have no value.

The Court agrees that any claim for contingent or merely possible consequences may not be considered by the jury. Additionally, as BES noted, it has entered into an agreement with JLG nullifying its indemnity or contribution claims. Accordingly, the Court hereby **GRANTS** JLG's Motion in Limine on this issue.

JLG's Motion in Limine is therefore **GRANTED in part** AND **DENIED in part** (Doc. # 189).

**4. JLG's Second Motion in Limine**

**A. Evidence of Settlement Agreement and Release Entered Into Between BES, JLG and plaintiffs Greg Heath, Carlene Heath and Bill Eslinger.**

JLG states that previously it believed that the settlement agreement should be admitted to help resolve an indemnity or contribution claim and the third party claim between JLG and Powerscreen. JLG states that recently the indemnity and contribution claim have been resolved and the Court has now severed the third party indemnity claim from the underlying misrepresentation claims. Therefore, JLG argues that the settlement agreement no longer has any relevance to BES's misrepresentation claims.

BES agrees that the settlement agreement is irrelevant, but argues that the fact that personal injuries occurred as a result of the September 30, 1999 incident is relevant

9

to explain the incident that resulted from JLG's misrepresentations.

The Court disagrees that this evidence is relevant. The damages being sought by BES have no relationship to the injuries suffered by Mr. Heath or Mr. Eslinger. Therefore, JLG Motion in Limine on this issue is hereby **GRANTED**.

### B. Evidence of Any Personal Injuries or Other Damage Arising from the Crane Failures.

JLG argues that the fact that personal injuries were sustained in the 1999 accident is irrelevant and would be unduly prejudicial to JLG. BES argues in opposition that it has a right to present evidence to explain the accident that occurred because of JLG's fraudulent misrepresentations.

For the reasons stated above, the Court finds this evidence to be irrelevant. Therefore, JLG's Motion in Limine on this issue is hereby **GRANTED**.

JLG's Second Motion in Limine is hereby **GRANTED** (Doc. # 234).


Date:  March 1, 2006             **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri            Fernando J. Gaitan, Jr.
                                            United States District Judge

10

Case 5:02-cv-06087-FJG   Document 260   Filed 03/01/06   Page 10 of 10